# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

February 12, 2014

Lyle W. Cayce
Clerk

No. 12-10834

UNITED STATES OF AMERICA,

Plaintiff – Appellee

v.

ROBERT L. BAKER,

Defendant – Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before REAVLEY, DAVIS, and HIGGINSON, Circuit Judges.

HIGGINSON, Circuit Judge:

Defendant-Appellant Robert Baker pleaded guilty to receiving material involving the sexual exploitation of a minor. At sentencing, the district court imposed a two-level enhancement under U.S.S.G. § 2G2.2(b)(3)(F) for distribution of child pornography through Baker's use of the file-sharing program Frostwire. This appeal presents the question of whether the district court properly applied the enhancement absent evidence that Baker knew Frostwire enabled other users to access the child pornography he downloaded. We find § 2G2.2(b)(3)(F) does not contain a scienter requirement and AFFIRM the district court's imposition of the two-level enhancement.

No. 12-10834

## FACTUAL BACKGROUND

Robert Baker installed Frostwire, a peer-to-peer file-sharing program, on his computer and used it to download eight video files containing child pornography. Peer-to-peer file-sharing programs like Frostwire allow groups of computers using the same file-sharing network to connect directly with each other and to share files among one another's computer systems. An Immigration and Customs Enforcement ("ICE") agent used Frostwire to twice download a video of child pornography from an IP address subsequently identified as Baker's. When confronted, Baker pleaded guilty without a plea agreement to one count of receiving visual depictions of a minor engaged in sexually explicit conduct.

The probation officer determined that Baker's total offense level was thirty-seven, which included his base offense level of twenty-two pursuant to U.S.S.G. § 2G2.2(a)(2) and a five-level increase for distribution of child pornography for the receipt of a thing of value under U.S.S.G. § 2G2.2(b)(3)(B). Baker's advisory guidelines range was set at 210 to 240 months imprisonment, given his criminal history category of I.

The parties filed responses and objections to the presentence report ("PSR"). The government indicated that it was unclear whether the five-level increase should apply absent evidence that Baker possessed specialized knowledge of file-sharing software and "understood that Frostwire shared unless he affirmatively took steps to prevent the sharing." The government maintained, however, that Baker should receive the two-level increase under U.S.S.G. § 2G2.2(b)(3)(F) because Baker used Frostwire to seek out child pornography, maintained the child pornography in a shared directory, did not attempt to disable Frostwire's default sharing function, and was not surprised that the ICE agent was able to download child pornography from his computer. Baker objected to both the five-level increase and the government's alternate

No. 12-10834

two-level increase under § 2G2.2(b)(3)(F), arguing that neither enhancement applied as he did not know that others could download files from his computer under Frostwire's "default settings." Baker also argued that he was entitled to a two-level decrease under § 2G2.2(b)(1) because his conduct was limited to the receipt of child pornography.

The district court rejected the five-level increase under § 2G2.2(b)(3)(B) on the ground that the defendant could not expect to receive a thing of value—access to a broader library of child pornography—in exchange for his distribution of child pornography if he did not know he was sharing child pornography through his use of Frostwire. The district court stated:

> In order to make the five-level increase, you would have to assume that the defendant understands the system well enough to know that if he uses file sharing that others can obtain the files he has. . . . And there's no indication here that he had that knowledge or was skilled enough to have that knowledge.

The district court did, however, impose the two-level increase under § 2G2.2(b)(3)(F). Baker unsuccessfully renewed his objection to the two-level increase, arguing that if he did not know how the file-sharing program worked he could not have knowingly distributed pornography, as he maintained was required for the § 2G2.2(b)(3)(F) enhancement.

Applying the two-level increase, the district court found a total offense level of thirty-four and advisory guidelines range of 151 to 188 months in prison. The court downwardly departed from the range and sentenced Baker to eighty months in prison, citing his serious health condition.

Baker timely appealed his sentence. On appeal, he argues that the district court erred when it increased his sentence two levels pursuant to § 2G2.2(b)(3)(F) because the guideline requires that the defendant knowingly distribute child pornography other than to minors or for receipt of a thing of value. As Baker contends that he was unaware that others could download

No. 12-10834

child pornography from his computer through Frostwire, he argues that he should not have received the two-level enhancement. Moreover, because his conduct was limited to receipt of child pornography, Baker maintains he should receive a two-level decrease under § 2G2.2(b)(1).

The government responds that no error occurred as § 2G2.2(b)(3)(F) does not require a particular *mens rea* and, even if it does, Baker had sufficient knowledge of Frostwire's capabilities to justify the two-level enhancement. The government further maintains that, even if an error did occur, the error was harmless given the district court's downward departure in sentencing.

## STANDARD OF REVIEW

We review the district court's interpretation and application of the sentencing guidelines *de novo* and its findings of fact for clear error. *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008).

## DISCUSSION

Section 2G2.2(b)(3)(F) provides for a two-level increase "[i]f the offense involved [] [d]istribution" of child pornography where the distribution is not to minors or for something of value. The commentary defines "distribution" as:

> any act, including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving the sexual exploitation of a minor. Accordingly, distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing but does not include the mere solicitation of such material by a defendant.

U.S.S.G. § 2G2.2 cmt. n.1.

Our sister circuits agree that "distribution as defined in § 2G2.2 includes operating a file sharing program that enables other participating users to access and download files [then automatically] placed in a shared folder" available to other users. *United States v. Dodd,* 598 F.3d 449, 452-53 (8th Cir.

2010).  It is likewise generally accepted both in this circuit and others that the five-level enhancement under § 2G2.2b(3)(B) applies only where the defendant knew that he was distributing child pornography in exchange for a thing of value through his use of file-sharing software.  *See, e.g., United States v. Vadnais*, 667 F.3d 1206, 1209 (11th Cir. 2012) ("[W]e have explicitly rejected any suggestion we automatically apply a [§ 2G2.2b(3)(B)] enhancement based merely on a defendant's use of a file-sharing program.") (quoting *United States v. Durham*, 618 F.3d 921, 931 (8th Cir. 2010)); *United States v. Desadier*, 495 F. App'x 501, 503 (5th Cir. 2012) (unpublished); *United States v. Onken*, 440 F. App'x 304, 305 (5th Cir. 2011) (unpublished); *United States v. Moore*, 328 F. App'x 308, 309 (5th Cir. 2009) (unpublished).  Logically, the defendant could not receive or anticipate receiving a thing of value in exchange for his distribution unless cognizant of his sharing.  The unsettled question, which has divided our sister circuits, is whether the defendant must know of the file-sharing program's capabilities in order to incur the two-level enhancement under § 2G2.2(b)(3)(F) for distribution of child pornography not to a minor nor for a thing of value.

Our court has not addressed whether § 2G2.2(b)(3)(F) contains such a scienter requirement in any controlling opinions, though the unpublished case of *United States v. Nielson*, 455 F. App'x 526 (5th Cir. 2011), is directly on point. There, this court held that the enhancement applied if the defendant's computer supplied child pornography through the use of file-sharing software, regardless of the defendant's mental state:

> A defendant may receive a two-level increase in offense level if his offense involved distribution. . . . The enhancement was thus applicable in this case if the government proved by a preponderance of the evidence that a torrent containing child pornography was uploaded from Nielson's computer to the file-sharing network.

5

*Nielson*, 455 F. App'x at 527.[1]  *Nielson* reinforced this court's prior statement that § 2G2.2(b)(3)(F) applied even if the defendant "distributed pornographic images by accident."  *United States v. Sistrunk*, 37 F. App'x 88, 2002 WL 971623 at *1 (5th Cir. 2002) (unpublished).  While these unpublished decisions are not binding on our court, we elaborate below why we find them persuasive, *see United States v. Sauseda*, 596 F.3d 279, 282 (5th Cir. 2010), and hold that imposition of a two-level enhancement under § 2G2.2(b)(3)(F) does not require scienter.

First, a careful examination of the guideline's plain language illustrates that § 2G2.2(b)(3)(F) does not contain a scienter requirement.  Ordinary rules of statutory construction apply when interpreting sentencing guidelines.  *United States v. Serfass*, 684 F.3d 548, 551 (5th Cir. 2012).  The commentary accompanying § 2G2.2(b)(3)(F) defines "distribution" as "*any act*, including . . . related to the transfer of material involving the sexual exploitation of a minor." U.S.S.G. § 2G2.2 cmt. n.1 (emphasis added).  "Use of the word 'any' to modify 'act' signals that the phrase should be construed broadly," rather than limited to its primary or natural sense, and does not contain an implicit *mens rea. United States v. Reingold*, 731 F.3d 204, 228-29 (2d Cir. 2013).  The commentary's definition of distribution as any act "*related to the transfer*" of child pornography likewise evidences "§ 2G2.2's relatively expansive reach." U.S.S.G. § 2G2.2 cmt. n.1 (emphasis added); *United States v. Ramos*, 695 F.3d 1035, 1040-41 (10th Cir. 2012).  "'Related' is defined as 'having similar properties.'"  *Ramos*, 695 F.3d at 1041 (quoting Webster's Third New International Dictionary 1916 (1981)).  The range of examples of distribution provided in the commentary further establishes that "transfer" should be

---

[1] It is notable that this court upheld Nielson's sentencing enhancement even though Nielson specifically claimed in an unsworn statement that he changed the default settings to prevent his child pornography torrents from being uploaded.  *Nielson*, 455 F. App'x at 527.

interpreted liberally and does not require movement or even receipt by someone else. *See, e.g.*, *Ramos*, 695 F.3d at 1041 ("[T]he mere passive 'posting' of material in a publicly accessible website constitutes distribution without a requirement that the poster have any intent that the material will be transferred—or that the poster actually transfer the material to someone else."); *United States v. Farney*, 513 F. App'x 114, 116 (2d Cir. 2013) (holding that placing child pornography files in a shared folder on a peer-to-peer file-sharing network can constitute distribution, "even if no one actually obtains an image from the folder"). Finally, "use of the word 'including' . . . signals that the cited acts of distribution are illustrative rather than exhaustive." *Reingold*, 731 F.3d at 228-29; s*ee also Ramos*, 695 F.3d at 1040 (finding that the commentary's use of "including" suggests that "the list of outlawed conduct is non-exhaustive"). Moreover, the guideline commentary lists "posting material involving the sexual exploitation of a minor on a website for public viewing" as an example of distribution. U.S.S.G. § 2G2.2 cmt. n.1. Downloading child pornography to a publically accessible folder through use of file-sharing software is akin to posting such material.

The language surrounding the operative definition reinforces this plain-language reading of § 2G2.2(b)(3)(F). In the same commentary that defines "distribution" without requiring an express *mens rea*, the Sentencing Commission defined "distribution to a minor" as the "*knowing* distribution to an individual who is a minor at the time of offense." U.S.S.G. § 2G2.2 cmt. n.1 (emphasis added). The drafters' explicit use of a scienter requirement in this instance indicates that its omission from the definition of "distribution" was not an oversight in need of judicial insertion. *See United States v. Ray,* 704 F.3d 1307, 1313 (10th Cir. 2013) ("Truly, the drafters of the commentary to § 2G2.2 knew how to include a scienter requirement when they wanted to."); *Serfass*, 684 F.3d at 552 ("The inclusion of a knowledge requirement in one

portion of the guideline confirms that its omission from another portion of the same guideline was intentional."); *United States v. Singleton*, 946 F.2d 23, 25 (5th Cir. 1991) ("[T]he precision of the drafters in including *mens rea* in neighboring sections indicates that the reason that the section does not use the word 'knowingly' is that the drafters did not wish such requirement to apply.").

Under our precedent, "the plain language of the guideline controls when it (1) is not ambiguous and (2) produces a result that is not absurd." *Serfass*, 684 F.3d at 553. For the reasons outlined above, the language of § 2G2.2(b)(3)(F) unambiguously does not contain a scienter requirement. Applying § 2G2.2(b)(3)(F) without a scienter requirement also does not produce an absurd result. Baker's dissemination of child pornography through his use of Frostwire—whether knowingly or not—contributed to the proliferation of illicit material and increased harm to the children exploited by its creation and distribution.

Neither the general presumption against strict-liability crimes nor the rule of lenity applies here. While crimes are generally presumed to require *mens rea, Staples v. United States*, 511 U.S. 600, 605-606 (1994), this court has repeatedly declined to read a *mens rea* requirement into a sentencing guideline absent explicit direction to do so. *See, e.g., United States v. Vargas-Dunn*, 356 F.3d 598, 605-606 (5th Cir. 2004); *Singleton*, 946 F.2d at 25 (holding that sentence enhancement for unlawful possession of a stolen firearm applied regardless of whether defendant knew the gun was stolen); *Serfass*, 684 F.3d at 553 (holding that the sentence enhancement for offenses involving importation of methamphetamine did not require knowledge that the methamphetamine had been imported). "The guidelines drafters have been explicit when they wished to import a *mens rea* requirement." *Singleton*, 946 F.2d at 25.

No. 12-10834

Similarly, we apply the rule of lenity only to guidelines provisions that are ambiguous. *See United States v. Bustillos-Pena,* 612 F.3d 863, 868 (5th Cir. 2010) ("Although the provisions of the Sentencing Guidelines are not statutes, we apply the rule of lenity to them when we find that they are ambiguous."). The above analysis of the plain language of § 2G2.2(b)(3)(F) evidences that there is no ambiguity. *See Singleton*, 946 F.2d at 25 (observing the rule of lenity does not apply where drafters declined to impose *mens rea*).

We therefore find that the plain language of § 2G2.2(b)(3)(F) does not contain a scienter requirement and is not ambiguous. This interpretation is controlling. We acknowledge that some of our sister circuits have held that § 2G2.2(b)(3)(F) contains a scienter requirement. *Compare United States v. Ray,* 704 F.3d 1307, 1311-12 (10th Cir. 2013) (finding § 2G2.2(b)(3)(F) does not require *mens rea*), *and United States v. Hayden*, 511 F. App'x 870, 876 (11th Cir. 2013) (unpublished) (same), *with United States v. Reed*, No. 11-4820, 2013 WL 5976374 at *1 (2d Cir. Nov. 12, 2013) (unpublished) (holding that § 2G2.2(b)(3)(F) contains a scienter requirement), *United States v. McManus*, 734 F.3d 315, 319 (4th Cir. 2013) (same), *and United States v. Robinson*, 714 F.3d 466, 468 (7th Cir. 2013) (same).[2] We maintain, however, that the position we affirm today is textually sound.

---

[2] The Sixth and Eighth Circuits have held that use of file-sharing software creates a "strong presumption" that the users understand others can access their files, such that the government does not need to prove knowledge to apply the enhancement. *See United States v. Conner*, 521 F. App'x 493, 499-501 (6th Cir. 2013) (unpublished); *United States v. Dodd,* 598 F.3d 449, 452 (8th Cir. 2010). The Eighth Circuit does, however, allow the defendant to rebut the presumption that he knew of the file-sharing program's capabilities through "concrete evidence of ignorance." *United States v. Durham*, 618 F.3d 921, 926-932 (8th Cir. 2010). The Sixth Circuit has not reached the question of whether the Eighth Circuit's option for rebuttal applies. *Conner,* 521 F. App'x at 501. The Ninth Circuit has considered but not decided whether § 2G2.2(b)(3)(F) contains a scienter requirement. *See United States v. Scheidt*, 465 F. App'x 609, 610 (9th Cir. 2012) (unpublished) ("We have not yet resolved the

No. 12-10834

Since we hold that § 2G2.2(b)(3)(F) does not contain a scienter requirement, the district court did not err in applying the enhancement even absent evidence of Baker's knowledge.[3]

As the district court did not err when it increased Baker's offense level by two levels pursuant to § 2G2.2(b)(3)(F), it likewise did not err when it failed to decrease Baker's offense level by two levels under § 2G2.2(b)(1). Section 2G2.2(b)(1) applies only when the "the defendant's conduct was limited to the receipt or solicitation of material involving the sexual exploitation of a minor." Baker's conduct was not limited to the receipt of child pornography but involved distribution. As a result, § 2G2.2(b)(1) is inapplicable.

## CONCLUSION

For the reasons set forth above, we AFFIRM Baker's sentence.

---

issue of whether the use of a file-sharing program, without more, can support the award of distribution points under section 2G2.2(b)."). Finally, we observe that when courts insert scienter, it is unclear how knowledge would be proven as to the peer-to-peer capabilities of file-sharing software. *Cf. Robinson*, 714 F.3d at 468 (allowing two-level enhancement where defendant was "reckless in failing to discover that the files he was downloading could be viewed online by other people").

[3] In light of this holding, we need not reach the question of whether Baker knew in fact that he was sharing child pornography through his use of Frostwire. The district court found that there was "no indication here that [Baker] had that knowledge or was skilled enough to have that knowledge." And the government conceded that "Baker did not express a familiarity with file-sharing software generally or indicate in his interviews that he knew he was specifically sharing files and that he understood Frostwire permitted sharing." Yet the government elsewhere cites Baker's lack of surprise that the agent was able to download child pornography from his computer and the sophisticated search terms employed to find child pornography as evidence of Baker's purported knowledge of Frostwire's capabilities. We do not decide this issue.