# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 2, 2021

Lyle W. Cayce
Clerk

No. 20-50171

United States of America,

*Plaintiff—Appellee,*

*versus*

Shozo Tanaka,

*Defendant—Appellant.*

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:19-CR-95-1

Before Stewart, Costa, and Willett, *Circuit Judges.*

Per Curiam:*

After Shozo Tanaka pled guilty to the production and possession of child pornography, he was sentenced to 480 months' imprisonment to be followed by two concurrent supervised release terms. He now appeals his sentence on several grounds. For the following reasons, we AFFIRM.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-50171

## I. Factual & Procedural Background

Tanaka pled guilty without the benefit of a plea agreement to the production and possession of child pornography in violation of 18 U.S.C. §§ 2251(a), (e), & 2252A(a)(5)(B). The investigation into Tanaka's offenses commenced after confirmed reports revealed that he had photographed and video recorded himself repeatedly raping a 14-year-old child that he was supposed to be babysitting.

During a consensual interview with investigators, Tanaka admitted that he started sexually touching the victim when she was 12 and progressed to having sex with her when she was 14. He admitted that he had sex with her on five or six occasions, she told him to stop, and he used a PSP gaming system to record the assaults. He also admitted that he took video of himself forcing the victim to engage in oral sex with him. He further stated that he had started surreptitiously viewing other women and girls through their windows around five years prior, had watched one girl for three or four years, and had secretly videoed young children he babysat using the bathroom. He admitted that he had downloaded child pornography from the internet, and he showed investigators where he stored the child pornography that he had created and downloaded. One of the flash drives seized from Tanaka contained videos of him raping the victim and forcing her to engage in oral sex. In several of the videos, the victim was heard telling Tanaka "no" and "stop." Based on the quantity of child pornography found on Tanaka's electronic devices, the presentence report ("PSR") held him accountable for over 600 images and videos. Due to the nature of the offenses, the PSR separately calculated the guidelines range for the production and possession counts.

With respect to the production offense, the PSR assigned Tanaka a base offense level of 32. His base offense level was increased by two levels

No. 20-50171

because the victim was in his custody or care at the time of the offense, two levels because the offense involved materials depicting a minor aged 12 to 15, two levels because the offense involved the commission of a sexual act or contact, and four levels because the offense involved material that portrayed sadistic or masochistic conduct or other depictions of violence. *See* U.S.S.G. § 2G2.1(b)(1)–(5). The resulting adjusted offense level was 42.

Because the adjusted offense level for the production offense was greater than that of the possession offense after application of the relevant offense-specific enhancements, Tanaka was assigned an adjusted offense level of 42. His adjusted offense level was increased by five levels under U.S.S.G. § 4B1.5 for having engaged in a pattern of activity involving prohibited sexual conduct, and he received a three-level reduction for timely acceptance of responsibility. Tanaka's total offense level of 43 and criminal history category of I yielded an advisory guidelines range of 480 months.[1] Although Tanaka's guidelines range for supervised release was five years to life, the Guidelines recommended that the maximum possible term be imposed based on the § 4B1.5 enhancement. Tanaka did not object to the PSR.

At sentencing, defense counsel noted that Tanaka was cooperative from the start, his wife had divorced him, he likely would not see his son again, he faced deportation, and a sentence in excess of 20 to 25 years would be the equivalent of a life sentence given his age. The victim's mother then described the impact of Tanaka's actions on the victim and on the family

---

[1] Tanaka's total offense level was capped at 43, which yields a guidelines range of life for all criminal history categories. *See* U.S.S.G. Ch.5, Pt. A (Sentencing Table). However, he was subject to maximum imprisonment terms of 30 years for the production offense and 10 years for the possession offense, which resulted in the sentences being run consecutively to achieve a maximum possible sentence of 480 months. *See* U.S.S.G. § 5G1.2(d).

No. 20-50171

more generally and read a statement that the victim had prepared. Finally, the government noted all that the victim had lost due to Tanaka's repeated assaults and the life-long consequences that she would endure as a result. It further observed that in some of the videos the victim could be heard saying "no" and "stop" and that Tanaka's only response was to tell her that it would be "okay." The government argued that Tanaka deserved to be sentenced to 480 months because his conduct demonstrated that he was "a predator." When offered final opportunities to speak, defense counsel asked for mercy.

The district court adopted the PSR without objection and sentenced Tanaka within the applicable guidelines range to the statutory maximum of 360 months of imprisonment on the production of child pornography count to be followed by a consecutive 120-month term of imprisonment on the possession of child pornography count, followed by concurrent life terms of supervised release. Tanaka did not object to his sentence. He filed this appeal.[2]

---

[2] In Tanaka's opening brief he argues in part that his guilty plea should be set aside because the rearraignment transcript did not establish that he had been properly advised as to the statutory penalty ranges for his offenses or the nature of the charges and because the magistrate judge failed to confirm the factual basis for his plea. Thereafter, on the government's motion, the district court corrected the record to reflect that, during an unrecorded bench conference, Tanaka had been properly advised of the statutory penalties and the nature of the charges against him and that the magistrate judge had ascertained that there was a factual basis for Tanaka's guilty plea. Because the corrected record establishes that the district court complied with Federal Rule of Criminal Procedure 11, Tanaka explicitly withdraws his challenges to his guilty plea in his reply brief on appeal. For these reasons, we do not address either party's arguments pertaining to the validity of Tanaka's guilty plea.

## II. Discussion

On appeal, Tanaka argues that the district court reversibly erred by imposing the four-level sentencing enhancement under § 2G2.1(b)(4)(A) because the images of the victim were not objectively sadistic, masochistic, or violent. He further asserts that the district court imposed a procedurally unreasonable sentence by failing to consider the 18 U.S.C. § 3553(a) sentencing factors and by failing to state its reasons for imposing the maximum aggregate term of imprisonment provided by statute and concurrent life terms of supervised release. We disagree.

*A. Sentencing Enhancement*

Under § 2G2.1(b)(4), a defendant is subject to a four-level upward adjustment "[i]f the offense involved material that portrays (A) sadistic or masochistic conduct or other depictions of violence; or (B) an infant or toddler." Because the victim was over 12 years old at the time Tanaka made the photographs and videos of his sexual assaults of the victim, the question here is whether any of the photographs or videos that Tanaka produced depict conduct that is sadistic or otherwise violent. *Id.*

"An image is sadistic if it depicts conduct that an objective observer would perceive as causing the victim in the image physical or emotional pain contemporaneously with the image's creation." *United States v. Mecham*, 950 F.3d 257, 267 (5th Cir. 2020) (internal quotation marks and citation omitted). The standard focuses on the viewpoint of an objective viewer rather than the viewpoint of the defendant or victim because the enhancement applies to "material that *portrays* sadistic conduct or other *depictions* of violence." *United States v. Nesmith*, 866 F.3d 677, 679 (5th Cir. 2017) (internal quotation marks and citation omitted). The "contemporaneous" requirement "ensures that not every child pornography conviction receives the enhancement as all victim children are likely to experience emotional pain

No. 20-50171

once they learn that pornography depicting them exists." *Mecham*, 950 F.3d at 267.

Review here is for plain error because Tanaka failed to object to the enhancement in the district court. *See Nesmith*, 866 F.3d at 679. To establish plain error, Tanaka must show a forfeited error that is clear or obvious that affected his substantial rights. *See Puckett v. United States*, 556 U.S. 129, 135 (2009). If he makes this showing, this court has the discretion to correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id*.

As this court observed in *Mecham*, images of a victim being forcibly restrained during a sex act may depict sufficiently painful and cruel conduct to be deemed sadistic even if the victim is an adult. *See* 950 F.3d at 268. Furthermore, this court has twice upheld application of the enhancement where a young child was forced to orally copulate a parent on grounds that such conduct would humiliate and degrade the victim. *See United States v. Cloud*, 630 F. App'x 236, 237–39 (5th Cir. 2015) (per curiam); *United States v. Comeaux*, 445 F. App'x 743, 745 (5th Cir. 2011) (per curiam) (observing that many depictions of sadistic conduct "do not involve violence or [physical] pain, but rather subjugation and humiliation").

According to the PSR, video footage in this case depicted Tanaka subjecting the victim to various forms of sexual assault, including rape and forced oral sex, over her verbal objections. Tanaka's victim endured his filming the assaults and described him manipulating her body and forcing her to perform various sex acts so that he could take specific pictures of her from numerous angles and document himself assaulting her. Because Tanaka did not adduce any evidence that refuted the victim's allegations, the district court could credit them. *See United States v. Torres-Magana*, 938 F.3d 213, 217 (5th Cir. 2019).

6

No. 20-50171

An objective observer viewing the foregoing depictions could reasonably conclude that Tanaka's actions caused the victim to contemporaneously suffer subjugation, emotional distress, and humiliation. *See Mecham*, 950 F.3d at 267–68. Consequently, the district court's application of the § 2G2.1(b)(4) enhancement was not clearly erroneous. *See Puckett*, 556 U.S. at 135.

### B. Procedural Challenge to Sentence

Tanaka also argues that his 480-month sentence is procedurally unreasonable because the district court failed to consider the § 3553(a) sentencing factors and failed to state its reasons for imposing Tanaka's sentence and supervised release terms.[3] Notwithstanding Tanaka's argument to the contrary, he did not preserve his procedural challenge by requesting a specific sentence. *See United States v. Coto-Mendoza*, 986 F.3d 583, 585–86 (5th Cir. 2021);[4] *United States v. Mondragon-Santiago*, 564 F.3d 357, 361 (5th Cir. 2009). Thus, this court's review is for plain error, which requires Tanaka to establish plain or obvious error that affects his substantial rights. *See Coto-Mendoza*, 986 F.3d at 585.

District courts are required at the time of sentencing to state in open court the reasons for the particular sentence imposed. *See* 18

---

[3] Although Tanaka argues that some of the special conditions of supervised release imposed by the district court "were extremely onerous," he offers no discernible argument as to whether their imposition constitutes reversible error. *See United States v. Brace*, 145 F.3d 247, 255–56 (5th Cir. 1998) (en banc) (holding that this court does not search the record to find the factual basis for a claim); *Beasley v. McCotter*, 798 F.2d 116, 118 (5th Cir. 1986) (noting that counseled briefs are not entitled to liberal construction). Therefore, he has waived any challenges to the imposition of these conditions. *See United States v. Scroggins*, 599 F.3d 433, 446–47 (5th Cir. 2010).

[4] *Coto-Mendoza* held that *Holguin-Hernandez v. United States*, 140 S. Ct. 762 (2020), does not override this court's precedent concerning what is required to preserve a claim of procedural sentencing error. *See* 986 F.3d at 585–86.

U.S.C. § 3553(c). "When the judge exercises her discretion to impose a sentence within the Guideline range and states for the record that she is doing so, little explanation is required." *United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005). Here, the district court did not reference the Guidelines or provide reasons for the sentence imposed. Tanaka's sentence, however, was within the Guideline range and he has failed to show that a more detailed explanation would have resulted in a lower sentence. *See Mondragon-Santiago*, 564 F.3d at 365. Accordingly, the district court's failure to adequately explain Tanaka's sentence did not affect his substantial rights. *Id.* Thus, we find no reversible plain error.

## III. Conclusion

The district court's judgment is AFFIRMED.